UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCELYN T. HUNTER, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:23-cv-14133 |
| ELITE LEGAL PRACTICE, PC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

**NOW COMES** JOYCELYN T. HUNTER ("Plaintiff"), by and through the undersigned counsel, complaining as to the conduct of ELITE LEGAL PRACTICE, PC ("Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Credit Repair Organization Act ("CROA"), pursuant to 15 U.S.C. § 1679 *et seq*., the Illinois Credit Services Organization Act ("ICSOA"), pursuant to 815 ILCS 605/1 *et seq*., and the Illinois Consumer Fraud and Deceptive Act ("ICFA"), pursuant to 815 ILCS 505/1 *et seq*., for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

1

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff resides in the Northern District of Illinois, Defendant conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred in the Northern District of Illinois.

## PARTIES

5. Plaintiff is a consumer and a natural person, over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

6. Defendant is a credit repair organization offers customers with debt resolution that challenges creditors, invalidates debts and provides legal defense. Defendant maintains its principal place of business at 1530 Faraday Ave., Carlsbad, California 92008.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In May 2023, Plaintiff had a number of debts which were impacting her credit, prompting her to begin looking for companies who may be able to assist her in improving her credit and resolving her obligations.

9. Subsequently thereafter, Plaintiff found Defendant due to its representations that it could help consumers resolve their obligations by negotiating with creditors to reduce her outstanding debts and to remove creditors from her consumer credit reports.

10. Plaintiff spoke with Defendant who again advised that Defendant would be able to resolve her obligations by negotiating with creditors to reduce her outstanding debts and to remove creditors from her consumer credit reports, and that in order to do so, Plaintiff would need to make

monthly payments over a certain period of time, which would go towards Defendant resolving her obligations.

11.     Plaintiff provided the debts she wanted addressed to Defendant and Defendant advised that it would be able to resolve her enrolled debts for monthly payments of $341.53. Defendant's representative also promised to improve her credit scores if she signed the contract.

12.     On July 3, 2023, Plaintiff entered into a contract with Defendant for its provision of credit repair and debt management services.

13.     Plaintiff proceeded to make her monthly payments to Defendant in a timely manner.

14.     However, upon Plaintiff's first payment to Defendant, Defendant deducted around $627 from her bank account.

15.     Upon inquiring about the unexpected withdrawal, Plaintiff was informed by Defendant that the increased charge resulted from the inclusion of an additional debt from Uprova.

16.     Plaintiff had disclosed the Uprova debt during the initial engagement with Defendant. However, Defendant asserted that Plaintiff had signed an additional document approving the $627, despite Plaintiff's documents indicating the lower rate of $341.53.

17.     In protest, Plaintiff demanded a refund but Defendant refused, though it did lower her payment to the agreed quote of $341.53.

18.     Throughout their dealings, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for her to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's services. Plaintiff detrimentally relied on Defendant's false promises.

19.     Defendant promised Plaintiff that her debts would be handled with care they would negotiate with Plaintiff's creditors to settle the accounts and remove them from her credit report.

20. Despite telling Plaintiff it would negotiate with creditors to reduce her outstanding debts, Defendant failed to engage with Plaintiff's creditors and continued to retain its fees without paying any of Plaintiffs creditors.

21. Defendant's failure to effectively negotiate settlements left Plaintiff creditworthiness severely compromised, leading to substantial damage to her financial reputation.

22. Despite having ample funds, Defendant failed to fulfill its representations and neglected to make meaningful progress in resolving Plaintiff's outstanding debts.

23. Defendant's inactions and unfulfilled promises paints a picture of the misleading and deceptive nature of Defendant's services, resulting in financial harm to consumers and their creditworthiness.

24. Despite making timely monthly payments, Defendant did not properly handle Plaintiff's enrolled debts that she wanted addressed.

25. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned attorney regarding her rights.

26. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, payments made to Defendant in violation of federal law and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management companies.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

27. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by § 1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

    a.    **Violations of CROA § 1679b(a)**

30. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

31. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Despite Plaintiff having made sufficient funds for Defendant to begin resolving Plaintiff's debts and improving her creditworthiness, despite such resolution offers being readily available, Defendant failed to engage in any of the services it represented it would perform for Plaintiff, instead deceiving Plaintiff for her monthly payments without providing any of the services it represented it would perform.

    **b.    Violation of CROA § 1679b(b)**

32.    The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

33.    Defendant violated § 1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Defendant has maintained Plaintiff's monthly payments, and failed to return the same, despite Defendant having failed to perform any of the services that would justify Defendant's retention of Plaintiff's monthly payments.

34.    Moreover, Defendant charge Plaintiff more than was originally agreed upon in the contract and refused to reimburse her after she explained that all of her enrolled debts were included in her initial meeting with Defendant.

    **c.    Violation of CROA § 1679c**

35.    The CROA, pursuant to 15 U.S.C. § 1679c, outlines various disclosures that CROs must provide to consumers prior to entering into contracts with consumers.

36.    Defendant violated § 1679c through its complete failure to provide Plaintiff a copy of the required disclosures as outlined by the CROA.

    **d.    Violation of CROA §§ 1679d(4) & 1679e**

37.    The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time

before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" (emphasis added). 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

38. Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the full notice of cancellation to Plaintiff outlining that Plaintiff may cancel prior to the third business day.

e. **Violation of CROA § 1679f(b)**

39. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

40. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded them under CROA through the contract between the parties. Defendant's contract contains a number of clauses and disclaimers that seek to insulate itself from liability for its conduct in violation of the CROA.

**WHEREFORE**, Plaintiff JOYCELYN T. HUNTER, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c.    Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d.    Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

    e.    Awarding any other relief as the Honorable Court deems just and appropriate.

<u>**COUNT II - VIOLATIONS OF THE ILLINOIS CREDIT SERVICES ORGANIZATION ACT**</u>

41. Plaintiff restates and realleges paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiff is a "Buyer" as defined by 815 ILCS 605/3(a).

43. Defendant are a "Credit Services Organization" as defined by 815 ILCS 605/3(d).

    **a.**    **Violation of ICSOA – 815 ILCS 605/5(1)**

44. The ICSOA, pursuant to 815 ILCS 605/5(1), prohibits a credit services organization from charging or receiving "any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer . . . ."

45. Defendant violated 815 ICLS 605/5(1) in much the same way it violated 15 U.S.C. § 1692b(b) outlined above.

    **b.**    **Violation of ICSOA – 815 ILCS 605/5(4)**

46. The ICSOA, pursuant to 815 ILCS 605/5(4), prohibits a credit services organization from "[m]ak[ing[ or us[ing] any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage, directly and indirectly, in any act, practice, or course of business intended to defraud or deceive a buyer in connection with the offer or sale of such services; including but not limited to: . . . the qualifications, training or experience

of its personnel; or the amount of credit improvement the consumer can expect to receive as a result of the services."

47. Defendant violated 815 ILCS 605/5(4) through the same conduct that violates 15 U.S.C. § 1679b(a)(3)-(4) outlined above.

**WHEREFORE**, Plaintiff JOCELYN T. HUNTER, respectfully requests that the Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

   b. Awarding Plaintiff actual damages pursuant to 815 ILCS 605/11;

   c. Awarding Plaintiff punitive damages pursuant to 815 ILCS 605/11;

   d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to 815 ILCS 605/11; and,

   e. Awarding any other relief the Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

48. Plaintiff restates and reallages paragraphs 1 through 47 as through fully set forth herein.

49. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

50. Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e) respectively.

51. Defendant are engaged in commerce in the state of Illinois. Defendant specializes in credit repair services, which is an activity within the stream of commerce and utilized in its regular course of business.

52. Defendant violated 815 ILCS 505/2 by engaging in unfair and deceptive acts in its failure to properly provide Plaintiff with the necessary assistance in her creditworthiness by disputing her misleading debts.

    a. **Unfairness and Deception**

53. Defendant conduct was unfair and deceptive because Plaintiff entrusted Defendant with her financial information while failing to properly engage with any of her creditors to try and negotiate settlements and to improve her creditworthiness.

54. Moreover, it was unfair and deceptive for Defendant to withdrawal more money than was agreed upon from Plaintiff. Defendant withdrew $627, which was more than double the original rate and falsely claimed that it was for an account that was already enrolled in its consolidation program.

55. Defendant unfair conduct is against public policy because it created the false impression that Defendant is handling your financial records properly while the consumer believes Defendant has their best interest.

56. Upon information and belief, Defendant systematically misleads consumers in Illinois to join their program without sufficiently addressing any of their needs or concerns.

57. Additionally, Defendant unlawful and unfair debt consolidation efforts gives it an unfair competitive advantage over businesses that consolidate debt lawfully.

58. Upon information and belief, a violation of the Illinois Credit Services Organizations Act is also a violation of the Illinois Consumer Fraud and Deceptive Practices Act.

59. As alleged above, Plaintiff was substantially harmed by Defendant misconduct.

60. An award of punitive damages is appropriate because Defendants' conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of the Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to Defendants' illegal conduct.

**WHEREFORE**, Plaintiff JOYCELYN T. HUNTER, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendants;

b. Award Plaintiff her actual damages in an amount to be determined at trial;

c. Award Plaintiff her punitive damages in an amount to be determined at trial;

d. Award Plaintiff her reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: September 26, 2023                    Respectfully Submitted,

/s/ *Marwan R. Daher*
Marwan R. Daher Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8188
mdaher@sulaimanlaw.com